CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG 31 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GEORGE M. THOMPSON, | ) |
|     Plaintiff, | ) Civil Action No. 7:07cv00092 |
| | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| SUSSANNE NEEB, et al., | ) By: Hon. Jackson L. Kiser |
| | ) Senior United States District Judge |
|     Defendants. | ) |

Plaintiff George M. Thompson ("Thompson"), a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants, Nurse Neeb and Sheriff D.T. McEathron, failed to provide him with certain Human Immunodeficiency Virus ("HIV") and pain medication while he was being held at the Warren County Jail ("the jail"). Thompson seeks an unspecified amount of monetary compensation for "mental stress" and "pain and suffering" and injunctive relief in the form of "better medical help for inmates" at the jail. (Pl.'s Compl. 5). He also requests a jury trial. Defendants filed a Motion to Dismiss to which Thompson filed a timely response, making the matter ripe for disposition. For the reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part and Defendant Neeb will be directed to provide additional information.

I.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of

the complaint some insuperable bar to relief." Browning v. Vecellio & Grogan, Inc., 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When "considering a motion to dismiss, the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id. Furthermore, the pleadings filed by pro se litigants are entitled to more liberal construction. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

## II.

The crux of Thompson's Complaint is that Ms. Sussanne Neeb, "head of medical at Warren County Jail," refused to provide Thompson with HIV and pain medication during his five month incarceration at the jail. (Pl.'s Compl. 1.) Thompson alleges the following sequence of events from which his claims arise. Thompson was arrested and taken to the jail on August 20, 2006. During his medical screening he informed the deputy that he was HIV positive and that he had a kidney infection and kidney stones. Thompson normally took medications for these conditions but did not have his personal belongings with him at the time of his arrest.[1] Thompson requested to see Nurse Neeb on August 22, 2006 to "get [his] medications started." (Pl.'s Additional Evidence I at 1.) Nurse Neeb informed Thompson that "she was not responsible for [him] getting his medications"

---

[1] As proof that he was indeed prescribed and taking the aforementioned medications, Thompson attaches a March 30, 2007, letter and inventory form from the Front Royal Police Department indicating their receipt of a duffle bag containing several of Thompson's personal items, including prescription bottles for the indicated medications.

2

at the jail. (Pl.'s Additional Evidence I at 2.)

On August 28, 2006, Thompson began having "[s]harp pains from [his] kidneys." (Pl.'s Compl. 3.) Nurse Neeb placed Thompson in an isolation cell for observation and gave him ibuprofen. Nurse Neeb, without examining Thompson, subsequently informed Thompson that he had been under observation for a over week and that "there was nothing wrong with [him]." (Pl.'s Additional Evidence I at 4.) She refused to let him see a physician.

On September 7, 2006, Thompson was transported from the jail to the Circuit Court in Richmond for an unspecified court hearing. The presiding judge, ordered that Thompson be seen by a physician at the Richmond City Jail before being transferred back to Warren County. Thompson was never examined by a physician during his six day stay at the Richmond City Jail due to "a mix-up." (Pl.'s Additional Evidence I at 5.) Thompson was transported back to the Warren County jail on September 13, 2006.

On September 15, 2006, Nurse Neeb allowed Thompson, at this request, to use her telephone so that he could call his primary care physician at the MCV Nelson Clinic in Richmond. Thompson spoke to an intern who took Thompson's name and message. Thompson then called the Richmond City Jail because of their access to his medical records from a previous incarceration in August of 2006. Thompson was informed that he needed to fax a signed medical release form to the Richmond City Jail in order to receive his records. Nurse Neeb provided Thompson with the release on September 18, 2006, but still had not received a response from Richmond as of September 22, 2006. Nurse Neeb again allowed Thompson to call the Richmond City Jail but he was unable to "get through." (Pl.'s Additional Evidence I at 11.) He was able to contact a nurse at the MCV Nelson Clinic who, after speaking with Nurse Neeb, agreed to fax Thompson's prescriptions and most recent

3

lab reports. Nurse Neeb indicated to Thompson that, if she ordered his prescriptions, it would "cost the jail a lot of money." (Pl.'s Additional Evidence I at 11.) She then requested that Thompson contact someone in Richmond to pick up his medications and bring them to the jail. Thompson's sister agreed to obtain the medication but was unable to access them because the pharmacy needed a notarized letter of permission from Thompson. Thompson sent the letter to his sister but the next time that he contacted her she informed him that their other sister had been unable to obtain the medications because they had not been called in to the pharmacy.

On October 10, 2006, Thompson was again transported to the Circuit Court in Richmond. After allowing Thompson to make a statement concerning his medical issues, the presiding judge, ordered that Thompson be seen by the physician at the Richmond City Jail. Thompson was examined by Dr. Stanley at the Richmond City Jail and several blood tests were ordered. Thompson received all of his HIV medications on October 17, 2006, but never received the results of the blood tests even though Nurse Neeb eventually came into possession of the documents. Thompson was transported back to the Warran County Jail on November 15, 2006. That day it was discovered that his Kaletra medication was missing. Accordingly, it was determined that the Kaletra would be mailed from Richmond to the Warren County Jail. Thompson refused to take his medications on November 16, 2006, because he "did not have all of them" and he "cannot take one without the other." (Pl.'s Additional Evidence I at 22.) Nurse Neeb informed Thompson that she had ordered the missing medication. The missing medication was dispensed to Thompson beginning on November 20, 2006. Thompson was charged $95.00 for the medication.

On November 27, 2006, Nurse Neeb advised Thompson that his pain medication for his kidney problems was almost depleted and that she would not refill the exact prescription because he

4

needed a lower dosage. On December 6, 2006, Nurse Neeb "had [Thompson] taken to St. Luke's Clinic, just so they would change [his] pain medication to a lower dosage." (Pl.'s Additional Evidence I at 27.)

On December 7, 2006, Thompson was transported back to Richmond for another court appearance. During the dates of December 8-11, 2006, Thompson was without his medication because "Nurse Neeb did not prepare [him] medication to carry with [him] to Richmond." (Pl.'s Additional Evidence I at 28.) When Thompson was transported back to the Warren Jail on December 12, 2006, he was "started back on [his] medications." (Pl.'s Additional Evidence I at 28.) On December 28, 2006, an unspecified portion of Thompson's medications "ran out." (Pl.'s Additional Evidence I at 29.) On January 3, 2006, Nurse Neeb informed Thompson that "she was in contact with St. Lukes Clinic and that they had not unpack[ed] the boxes with the medications yet," but "she would try to push them to do so." (Pl.'s Additional Evidence I at 29.) On January 20, 2007, Thompson was transported to the Richmond City Jail and has not returned to the Warren County Jail. He is currently incarcerated at Powhatan Correctional Center.

Thompson contends that he was without his medication for over eighty days total and that he "feels" as if his "life has been put in danger." (Pl.'s Compl. 6.) He alleges that missing HIV medication can lead to viral mutation and drug resistance, potentially endangering his health. He also "feel[s] Nurse Neeb's actions" caused "irreversible damage to [his] body and [his] chances of a longer life" and seems to allege that her actions were based largely on financial considerations. (Pl.'s Compl. 6; Pl.'s Additional Evidence I at 11.) Thompson further alleges that his lack of HIV medication caused him "worrying and emotional stress." (Pl.'s Additional Evidence I at 29.)

Defendants argue that Thompson's claims fail as he fails to demonstrate a serious injury or

a deterioration in his condition. Defendants further claim that Nurse Neeb's efforts were impeded by Thompson's transportation and incarceration at the Richmond City Jail on three different occasions. Defendants finally argue that in their official capacities, they are not persons subject to suit under § 1983 and that in their individual capacities, they are entitled to qualified immunity.

### III.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment[2], a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Thus, both an objective and a subjective component are needed. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997).

---

[2] It is unclear from the pleadings whether Thompson was a pretrial detainee or a convicted prisoner during the relevant time period. If Thompson was a pretrial detainee and not a convicted prisoner, his claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which operates only after the state has secured a conviction. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). This distinction is of no import, however, because the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97, 104-06); Whisenant v. Yuam, 739 F.2d 160, 163 n.4 (4th Cir. 1984); Westmoreland v. Brown, 883 F. Supp. 67, 73 (E.D. Va. 1995); see also Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (holding that the due process rights of pretrial detainees are coextensive with the Eighth Amendment rights of convicted prisoners regarding medical treatment while incarcerated); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (holding that the "deliberate indifference" standard is applicable to pretrial detainees under the Fourteenth Amendment). Accordingly, I will consider relevant Eight Amendment decisions in the context of Thompson's claims.

Furthermore, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06.[3]

Applying these principles, I find that Thompson has certainly demonstrated that he suffers from a serious medical need. Many courts have had occasion to consider the issue and it is clear that the majority agree that HIV constitutes a serious medical need. See Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004) (finding that state prisoner's HIV and hepatitis were "serious medical needs," for the purposes of prisoner's Eighth Amendment claim); Montgomery v. Pinchak, 294 F.3d 492 (3rd Cir. 2002) (finding that plaintiff had satisfied the first prong of Estelle by demonstrating a serious medical need because of his HIV condition); Taylor v. Barnett, 105 F. Supp. 2d 483 (E.D. Va. 2000) (finding that "HIV-positive inmates and inmates suffering from the AIDS virus clearly suffer from serious medical needs").[4]

---

[3] To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence). Thompson fails to allege any personal or direct involvement by D.T. McEathron, Warren County Sheriff, as he merely claims that Nurse Neeb "is an employee of Warren Count Jail" and that she "works under Sheriff D.T. McEathron's leadership." (Pl.'s Compl. 6.) Accordingly, all claims against Sheriff McEathron will be dismissed.

[4] Defendants' argument that Thompson's claims as to his HIV medication fail because he does not allege a current injury is without merit. Actual physical injury is not necessary to survive a motion to dismiss as an Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm. See Helling v. McKinney, 509 U.S. 25, 35 (1993) (finding that the potential future health risk caused by exposure to second hand smoke may form the basis for relief under the Eight Amendment); Smith v. Carpenter, 316 F.3d 178 (2d

I must next determine whether Defendants exhibited deliberate indifference to Plaintiff's medical needs. Defendants were certainly aware of the fact that Thompson was HIV-positive when he was booked into the jail on August 20, 2006. Thompson claims that he was taking this medication on a daily basis prior to his incarceration and that he informed Defendants of that fact. Thompson requested the HIV medication on numerous occasions and also made significant efforts towards an attempt to receive the medication on his own. Even so, Thompson did not receive a single dose of his prescribed HIV medication until October 17, 2006, and then he occasionally missed his medication for days at a time. There is also some question as to whether his HIV medications were ever reordered toward the end of his incarceration at the prison. Defendants offer no explanation for the failure to obtain Thompson's medications other than to suggest that his trips to Richmond for court dates made the process more difficult. However, Defendants seem to fail to recognize that Thompson was provided with his HIV medications at the Richmond City Jail within a relatively short period of time and only after he caught the attention of the presiding judge at his court hearing. Defendants allegedly failed to provide Thompson with any of his HIV medications, with the exception of one Kaletra refill, during his entire incarceration.

As the <u>Taylor</u> court noted, the "common thread" throughout the cases that have grappled with the issue of what precise level of medical care is necessary for the treatment of HIV/AIDS in prisons, is "a careful evaluation of all the facts and circumstances surrounding the allegations of denial of

---

Cir. 2003) (citing <u>Helling</u> in the context of the denial of medication to an HIV-positive inmate); <u>see also</u> <u>Taylor</u>, 105 F. Supp. 2d at 488-89 (finding that plaintiff's claims that a switch in his HIV medication caused serious side effects and shortened his life were sufficient to overcome a motion to dismiss and possibly state a claim). As the Supreme Court recognized in <u>Helling</u>, prison officials may not ignore medical conditions that are "very likely to cause serious illness and needless suffering" in the future even if the prisoner has "no serious current symptoms." <u>Helling</u>, 509 U.S. at 33. Even so, although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm. <u>Smith</u>, 316 F.3d at 188.

8

Case 7:07-cv-00092-JLK-mfu Document 29 Filed 08/31/07 Page 8 of 11 Pageid#: 151

proper medical care to determine whether the defendant acted with deliberate indifference or acted upon informed medical judgment." Taylor v. Barnett, 105 F. Supp. 2d 483, 488-89 (E.D. Va. 2000)[5]; Compare Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004) (finding that defendants' complete withdrawal of prisoner's treatment for HIV constituted deliberate indifference to his serious medical needs); Montgomery v. Pinchak, 294 F.3d 492 (3rd Cir. 2002) (finding that allegations that an inmate was not provided with his HIV medications for ten months constituted a prima facie case of deliberate indifference where inmate's white blood cell count dropped to a dangerously low level by the end of the ten month period); Sorrells v. Atwood, 46 Fed. Appx. 732 (5th Cir. 2002) (vacating district court's dismissal of a prisoner's § 1983 claim where prison officials delayed the inmate from getting his medication on several occasions and prevented him from receiving his morning dose on eleven to twelve occasions); Durmer v. O'Carroll, M.D., 991 F.2d 64, 68 (3d Cir. 1993) (noting that deliberate indifference may exist in a variety of different circumstances, including where "prison authorities prevent an inmate from receiving recommended treatment," or "where knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care"); Richey v. Ferguson, No. 05-cv-5162, slip op., at *20 (W.D. Ark. March 6, 2007) (finding a genuine issue of material fact as to whether defendants were deliberately indifferent to a serious medical need and whether their actions were motivated by an effort to reduce costs where an inmate did not receive

---

[5] The Taylor court also noted that the allegation that the defendant was motivated solely by cost considerations and not by an informed medical decision was sufficient to overcome a motion to dismiss. Id. at 489. An inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Furthermore, inmates are not entitled to the best and most expensive form of treatment. See Taylor, 105 F. Supp. 2d at 489 (noting that the Eighth Amendment does not forbid prison officials from considering cost in determining the appropriate course of treatment for an inmate and that it only becomes unacceptable if prison officials make health care decisions *solely* upon cost considerations without any medical rationale (citing Hawley v. Evans, 716 F. Supp. 601 (N.D. Ga. 1989))).

9

his HIV medications for approximately one month subsequent to incarceration); McMillan v. Hunter, No. 2:05-cv-141, slip op., at *5 (M.D. Fla. Feb. 20, 2007) (denying summary judgment for defendants and finding that a prison's failure to provide a pre-trial detainee with at least thirty-nine doses of HIV medication was sufficient enough for a jury to find that the prison had a practice that caused plaintiff constitutional injury); with Smith v. Carpenter, 316 F.3d 178 (2d Cir. 2003) (finding no failure to meet inmate's serious medical need where the inmate was not provided with is HIV medication on two occasions, one for five days and one for seven days); Jackson v. Fauver, 334 F. Supp. 2d 697, 718 (D.N.J. 2004) (holding that a six week delay in receiving HIV/AIDS medication did not state a claim for cruel and unusual punishment where the plaintiff did not establish any harm caused by the delay); Evans v. Bonner, 196 F. Supp. 2d 252 (E.D.N.Y. 2002) (finding no deliberate indifference where inmate's HIV medications were dispensed but were merely an hour late on several occasions); Nolley v. County of Erie, 776 F. Supp. 715, 740 (W.D.N.Y. 1991) (the occasional failure of the correctional facility to provide an inmate with her AZT medication did not violate the Eighth Amendment as the failure was due to a negligent medication delivery system, and not to a deliberate indifference on the part of medical personnel).

Nurse Neeb may well be able to prove on summary judgment that she was not deliberately indifferent and that Thompson fails to prove a potential future health risk. I cannot make this finding from the existing record, however. Neeb does not address the details of Thompson's treatment or provide any medical records. I find that there remain facts in dispute as to why Thompson was unable to receive his HIV medication in a timely manner and whether Neeb was aware of the potential serious risk of harm. I also find that whether his belated and then sporadic treatment impacted his health is also in dispute. Therefore, I will allow the claims against Nurse Neeb to go

forward at this time. Accordingly, I will deny Nurse Neeb's Motion to Dismiss and direct her to file a supplemental Motion for Summary Judgment supported by affidavit evidence, pursuant to the Standing Order of the Court issued May 3, 1996, and Rule 83(b) of the Federal Rules of Civil Procedure.[6]

### III.

Accordingly, taking Thompson's allegations in the light most favorable to him, I conclude that they are sufficient to state possible claims under § 1983 that Nurse Neeb knew of, and did not provide necessary treatment for, a serious medical problem. Based on the foregoing, Defendants' Motion to Dismiss will be granted in part and denied in part and Nurse Neeb will be directed to provide additional documentary evidence to the court. An appropriate Order will issue this day.

ENTER: This 31st day of August, 2007.

/s/ Jackson L. Kiser
Senior United States District Judge

---

[6] I agree that, as to Thompson's § 1983 claims against Nurse Neeb in her official capacity, she is not a "person" subject to suit under § 1983. See Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989) (finding that state or state officials acting in their official capacity are not "persons" within the meaning of § 1983 and, thus, may not be sued for money damages). However, sued in her personal capacity, Nurse Neeb is subject to Thompson's suit under § 1983. See Hafer v. Melo, 502 U.S. 21 (1991). Prison officials are shielded by qualified immunity unless the alleged actions violated "clearly established" law of which a reasonable officer would have been aware. Korb v. Lehman, 919 F.2d 243, 246-47 (4th Cir. 1990); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). I find that the evidence creates issues of fact as to whether Nurse Neeb acted with deliberate indifference to a serious medical need and she is, therefore, not entitled to immunity from suit. For the past thirty years, prison officials have been on notice that denying or delaying access to medical care violates the Eighth Amendment. Estelle, 429 U.S. at 104-05. Therefore, I am unable to hold that Nurse Neeb reasonably believed that she was not violating one of Thompson's "clearly established" constitutional rights when she was confronted with the situation of providing him with his HIV medication. As a result, I will not grant Defendants' Motion to Dismiss on the grounds of qualified immunity. Accordingly, Thompson's claims will proceed against Nurse Neeb only in her personal capacity.