CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC - 3 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

GEORGE M. THOMPSON,        )
                            )       Civil Action No. 7:07cv00092
    Plaintiff,          )
                            )       **MEMORANDUM OPINION**
                            )
SUSSANNE NEEB, et al.,       )       By: Hon. Jackson L. Kiser
                            )       Senior United States District Judge
    Defendants.        )

Plaintiff George M. Thompson, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. §1343. By Memorandum Opinion and Order entered August 31, 2007, I permitted the action to go forward as to plaintiff's allegations that the remaining defendant, Nurse Neeb, failed to provide plaintiff with certain Human Immunodeficiency Virus ("HIV") and pain medication while he was incarcerated at the Warren County Jail ("the jail").[1] I denied Neeb's motion to dismiss and directed her to file a motion for summary judgment supported by affidavit evidence, pursuant to the Standing Order of the Court issued May 3, 1996, and Rule 83(b) of the Federal Rules of Civil Procedure. Neeb filed her motion for summary judgment on October 29, 2007. The court notified plaintiff of defendant's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and warned plaintiff that judgment might be granted for the defendant if he did not respond to the motion by filing affidavits or other documents contradicting the defendant's evidence or otherwise explaining his claims. Twenty days have passed and plaintiff has not responded, thus making the underlying matter ripe for disposition.[2] Upon review of the record, I will grant defendant's motion for summary judgment.

---

[1] By that same Memorandum Opinion and Order, I granted a motion to dismiss all claims against defendant McEathron. Defendant Warren County was terminated by Order entered April 27, 2007.

[2] The court notes that plaintiff's motion for an extension of time within which to file a response was granted on November 5, 2007. Plaintiff was granted an additional twenty days from that date to file his response. The enlarged time period has fully elapsed.

## I.

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.

In the Memorandum Opinion entered August 31, 2007, I summarized plaintiff's claims and his statement of the factual history of this case, and find no need to repeat that summary here. Essentially, plaintiff complains that Neeb refused to provide him with necessary HIV and pain medication during his five month incarceration at the jail. (Pl.'s Compl. 1.)

Neeb argues that she is entitled to summary judgment as plaintiff failed to exhaust his administrative remedies and she was not deliberately indifferent to plaintiff's serious medical needs. Neeb explains that she is a registered nurse and that she has been employed at the jail for four years. She is the only nurse at the jail, which houses 150 inmates, and she works Monday through Friday. Neeb further explains that, as a nurse, she does not have the professional authority to write prescriptions, and the jail does not have the equipment or facilities to do lab work. Neeb contends that she did her very best to obtain plaintiff's medication and that cost was never a factor in her treatment.

2

Neeb contends that she first examined plaintiff on August 22, 2006, the day after his incarceration at the jail. Plaintiff informed Neeb that he was HIV positive and that he had kidney problems. Plaintiff did not have any medication with him, but he indicated that his family had his medication at home and that they would bring the medication to him. Neeb allowed plaintiff to use her telephone on that date. She noted that he did not appear to be in any distress or to be experiencing any physical or medical problems. On August 24, 2006, plaintiff was again allowed to use the phone to call his family regarding his medication. Neeb alleges that plaintiff was not talking to his family about his medication, so she requested that he end the phone call.

Neeb contends that on that same date, she contacted the St. Luke Community Clinic ("the clinic"), and requested the first available appointment for plaintiff. Neeb explains that she is the sole medical provider at the jail, but that the jail maintains an arrangement with the clinic where inmates are examined once a month by a clinic physician during a specified time period. She alleges that, if she had determined that plaintiff was suffering from an acute medical problem and needed to be examined immediately, she would have transported him to the emergency room. Neeb contends that plaintiff did not appear have an emergent need for medical treatment as her chart notes indicate on August 24 and 25, 2006, that plaintiff was eating and drinking normally, and that he was playing basketball during the recreation period.

Neeb alleges that several days later, a jail deputy called her at home and informed her that plaintiff was complaining about pain in his kidneys. Neeb contends that, based on her prior observations of plaintiff, and the deputy's description of his current observations of plaintiff, Neeb did not believe that plaintiff was in any emergency distress. Neeb claims that she ordered that plaintiff be moved to a single cell for observation, however. She notes that plaintiff complains that a deputy erroneously gave him ibuprofen for his kidney pain during his observation. Neeb states that

3

acetaminophen is not advised for a person who has liver problems, but she is not aware of any medical problems that could arise if ibuprofen is given to a patient for kidney problems.

Neeb alleges that plaintiff was transported to the Richmond City Jail on September 7, 2006, prior to plaintiff's scheduled appointment at the clinic. Neeb noted on that date that plaintiff did not appear to be in any distress. Plaintiff was transported back to the Warren County Jail on September 13, 2006. Neeb contends that she immediately contacted the clinic again to reschedule plaintiff's appointment. During this phone call, Neeb alleges that she inquired as to whether the clinic physicians could prescribe medication for plaintiff prior to his appointment time, but was informed that plaintiff must first be seen for a complete medical history and physical. Neeb's chart notes again indicate that plaintiff did not appear to be in any distress or pain on that date.

On September 14, 2006, Neeb requested that plaintiff sign a medical release in an attempt to obtain his medical records, "in furtherance of trying to get him whatever treatment he might need." (Neeb Aff. at 3.) Plaintiff informed Neeb that he had last been treated at MCV Hospital ("MCV"). Accordingly, Neeb contacted MCV on September 20, 2006, to obtain prescriptions for plaintiff and a more complete medical history. MCV staff faxed Neeb some limited medical history and prescription information on September 22, 2006; however, when Neeb contacted MCV again, she was informed that plaintiff had not been seen at that facility since July of 2005, that he had not followed up on his prior treatment or filled his prescriptions of April 2006, that his prescriptions were no longer effective, and that they would not provide any more prescriptions for him. Neeb was further informed that plaintiff had experienced kidney stones and kidney lesions in July of 2005, but that those "should have cleared up long ago." (Neeb Aff. at 4.)

On September 25, 2006, Neeb allowed plaintiff to call his sister to request that she pick up his medication for him at his Richmond pharmacy. Plaintiff subsequently wrote a letter giving his sister

4

permission to obtain his medication from the pharmacy. Neeb does not provide any further information on this subject.

On October 10, 2006, Neeb contends that plaintiff was again transported to Richmond. Plaintiff returned on November 15, 2006, with three medications prescribed by the Richmond City Jail physician: Darvocet, a narcotic pain medication, and Videx and Truvada, which are HIV medications. Plaintiff refused to take his medication because he claims that he was missing a third HIV medication, Kaletra. Neeb immediately contacted the Richmond City Jail and requested that the physician return her phone call. Neeb contacted the Richmond City Jail again on November 16, 2006, and, after speaking with Dr. Stanley, was informed that "they did not have" the missing medication and that "it was up to [the jail] to provide it now." (Neeb Aff. at 5.) Neeb requested that Dr. Stanley at least fax Neeb a copy of plaintiff's prescriptions. On that same date, Neeb drove to the pharmacy and gave the pharmacist the faxed copy. The pharmacist refused to fill the prescriptions because they were not legal prescriptions. When the pharmacist contacted Dr. Stanley, he was informed that Dr. Stanley was not authorizing any prescriptions to be filled. On November 20, 2006, Neeb presented the faxed prescription information to the clinic physician and explained the situation to him. She alleges that the physician agreed to write the prescription for the third antiviral medication. Neeb contends that plaintiff began taking all three antiviral medications immediately.

On December 2, 2006, plaintiff depleted his Darvocet. Accordingly, Neeb contends that she decided to provide plaintiff with 400-600 mg. of ibuprofen, as needed, until his December 6, 2006 appointment at the clinic. Her chart notes on that date indicate that plaintiff was not in any pain or distress. Plaintiff was transported to the clinic on December 6, 2006, for his scheduled appointment. Plaintiff was prescribed a non-narcotic substitute for the Darvocet, his antiviral medications, and was given a flu shot. The clinic physician also gave plaintiff a referral so that he could be scheduled at the

5

hospital for HIV lab work. A January 2007 appointment was scheduled for plaintiff to be seen at the University of Virginia regarding this lab work. Plaintiff was again transported to the Richmond City Jail on December 7, 2006, and returned on December 11, 2006. He was resumed on his medication at that time and expressed no medical complaints. On December 20, 2006, Neeb alleges that she received plaintiff's HIV lab work results and that his results were entirely normal except for a high cholesterol level. His kidney analysis was also completely normal. Neeb contends that plaintiff continued to receive all of his medication until he was transferred from the jail on January 23, 2007.

### III.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (hereinafter "PLRA") requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. See 42 U.S.C. § 1997e(a) (requiring that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). There is no doubt that the PLRA's exhaustion requirement is mandatory. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005). In order to satisfy 42 U.S.C. § 1997e(a) for a particular claim, where the prison provides an administrative grievance procedure, the inmate must file a grievance raising the claim and pursue it through all available levels of appeal. See Allsbrook v. Terrangi, 117 Fed. App'x 309 (4th Cir. 2005); Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). Letters or communications outside the grievance procedure are not sufficient constitute exhaustion. See Sloan v. United States, No. 3:01CV347, 2002 WL 32502088 at *3 (E.D. Va. July 10, 2002), aff'd 63 Fed. App'x 174 (4th Cir. 2003)). In the instant action, plaintiff failed to fully exhaust the grievance procedures available to him at the Warren County Jail.

6

According to the affidavit of Captain Barr, Warren County Sheriff's Office Captain, inmates are required to exhaust claims in accordance with the grievance procedures established by the jail. Barr indicates that, upon arrival, all inmates are given an Inmate Handbook that explains the jail's inmate grievance procedure. All grievances must be submitted in writing on a standard grievance form, which can be obtained by a request form to the correction officer on duty. If an inmate is not satisfied with the response given, the inmate may appeal that response to the appropriate official. Once the inmate has appealed the response, the grievance procedure is completed.

Barr indicates that, based on his records, plaintiff requested a grievance form only once during his incarceration at the jail. This grievance concerned plaintiff's complaint that several pieces of mail had not been received by his lawyer or family members. The response concluded that plaintiff's complaint was non-grievable as the mail was sent out from the jail daily and any subsequent misplacement was beyond the control of jail officials. Plaintiff did not appeal this response. Barr states that plaintiff "never even initiated, much less completed, the grievance procedure at Warren County Jail with respect to the medical matters that he claims in this lawsuit." (Barr Aff. at 2.) Accordingly, plaintiff failed to exhaust his administrative remedies as to his claims of deliberate indifference and these claims must be dismissed pursuant to 42 U.S.C. § 1997e(a).[3]

## B. Eighth Amendment

Assuming arguendo that plaintiff had exhausted all available administrative remedies, his claims would fail on the merits.[4] To state a cause of action under § 1983, a plaintiff must establish that

---

[3] Plaintiff's deposition testimony suggests that he filed a request form for a grievance at some unknown date but plaintiff does not contend that he was not provided with a grievance form or that he ever actually filed a grievance concerning his medical concerns.

[4] It is unclear from the pleadings whether plaintiff was a pretrial detainee or a convicted prisoner during the relevant time period. If plaintiff was a pretrial detainee and not a convicted prisoner, his claim is governed by the
(continued...)

Case 7:07-cv-00092-JLK-mfu   Document 53   Filed 12/03/07   Page 7 of 10   Pageid#: 314

he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Thus, both an objective and a subjective component are needed. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Furthermore, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 851-52

---

[4](...continued)
Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which operates only after the state has secured a conviction. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). This distinction is of no import, however, because the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97, 104-06); Whisenant v. Yuam, 739 F.2d 160, 163 n.4 (4th Cir. 1984); Westmoreland v. Brown, 883 F. Supp. 67, 73 (E.D. Va. 1995); see also Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (holding that the due process rights of pretrial detainees are coextensive with the Eighth Amendment rights of convicted prisoners regarding medical treatment while incarcerated); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (holding that the "deliberate indifference" standard is applicable to pretrial detainees under the Fourteenth Amendment). Accordingly, I will consider relevant Eight Amendment decisions in the context of plaintiff's claims.

8

(4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Furthermore, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Applying these principles, I find that Neeb did not exhibit deliberate indifference to plaintiff's medical needs. The "common thread" throughout the cases that have grappled with the issue of what precise level of medical care is necessary for the treatment of HIV/AIDS in prisons, is "a careful evaluation of all the facts and circumstances surrounding the allegations of denial of proper medical care to determine whether the defendant acted with deliberate indifference." Taylor v. Barnett, 105 F. Supp. 2d 483, 488-89 (E.D. Va. 2000). I first note that, as a nurse, Neeb is prohibited from writing prescriptions herself. Furthermore, Neeb put forth a substantial effort to obtain plaintiff's HIV medication. Neeb repeatedly rescheduled appointments for plaintiff at the clinic, attempted to obtain plaintiff's prescriptions through other avenues such as prior places of treatment, and facilitated plaintiff's communication with his family members. Moreover, the court finds that plaintiff's medical records reveal that plaintiff's medical condition was adequately monitored by Neeb as he was examined on numerous occasions and there are over forty entries detailing Neeb's interaction with plaintiff and her attempts to obtain his HIV medication. Finally, plaintiff's other criminal prosecutions and his failure to follow-up with prior medical appointments certainly contributed to the delay in obtaining his medication; the record clearly indicates that these delays, which were not lengthy, were not in any way Neeb's fault. Accordingly, I cannot find that Neeb intentionally refused to provide plaintiff's medication. At most, plaintiff alleges a claim of negligence and such a claim is not cognizable in this action. See Owens v. O'Dea, 149 F.3d 1184 (6th Cir. 1998) (finding that an alleged inadvertent failure to provide adequate medical care to an HIV positive patient, while perhaps evidence of medical

9

malpractice, does not evidence sufficiently harmful acts or omissions to state a cognizable claim).[5,6]

## IV.

For the stated reasons, I will grant defendant's motion for summary judgment.  Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of this Memorandum Opinion, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk of the Court is directed to send a copy of Memorandum Opinion and Order to plaintiff and to counsel of record for defendants.

ENTER: This 3rd day of December, 2007.

Senior United States District Judge

---

[5] Plaintiff further complains that ibuprofen was insufficient to alleviate his kidney pain, but the affidavit of Nurse Neeb makes it clear that, in her medical judgment and the medical judgment of the clinic physician, the narcotic medication that plaintiff requested was inappropriate. Further, plaintiff's lab results in December of 2006, indicated normal kidney function. Although plaintiff may be dissatisfied with Neeb's diagnosis method or prescribed treatment plan, these complaints amount to nothing more than disagreements between medical staff and an inmate as to proper diagnostic methods and a course of treatment, which are not actionable under the Eighth Amendment. Further, to the extent that plaintiff believes that Neeb failed to recognize or treat any alleged kidney condition, such a disagreement does not rise to the level of a federal constitutional violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-06.

[6] By Order entered October 2, 2007, plaintiff was granted the opportunity to take the written depositions of two witnesses pursuant to Federal Rule of Civil Procedure 31. On November 15, 2007, plaintiff filed another motion for discovery requesting Neeb's employment record and his medical records.  Plaintiff has failed to illustrate the relevance of his large discovery request to the issues at hand.  Further, a large portion of the request concerns medical records from the Warren County jail and Neeb has already submitted plaintiff's extensive jail medical records. Accordingly, I will deny plaintiff's motion for discovery See Lewis v. Casey, 518 U.S. 343, 355 (1996) (finding that the right to access the court does not guarantee prisoners the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 725 (4th Cir. 1991) (summary judgment found to be proper where any further evidence developed through discovery would have been immaterial).